IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JESSICA ARGUELLO § | | |
| § | | |
| § | | |
| PLAINTIFF § | | |
| § | | |
| v. § | CIVIL ACTION NO. 1:21-cv-00889-LY | |
| § | | |
| § | | |
| HCA HEALTHCARE, INC. § | | |
| DOING BUSINESS AS § | | |
| ST. DAVID'S HEALTHCARE, § | | |
| SOUTH AUSTIN HOSPITAL, AND § | JURY TRIAL DEMANDED | |
| SOUTH AUSTIN SURGERY CENTER, LTD § | | |
| § | | |
| § | | |
| DEFENDANTS § | | |

**PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT**

COMES NOW, Jessica Arguello, Plaintiff herein, and files Plaintiff's First Amended Original Complaint against Defendant, HCA Healthcare, Inc., (hereinafter referred to as "HCA"), and alleges as follows:

**INTRODUCTION**

This is a medication error healthcare liability claim for money damages, arising from Defendant's employees' negligence in providing a surgeon with formalin in a syringe to inject into Plaintiff's right hand instead of a syringe filled with a local anesthetic of 20 ml of 1% Lidocaine plain with Epinephrine, 0.25% Marcaine plain mixed in a 1:1 mixture the surgeon believed he was injecting. The negligence resulted in formalin being injected into Plaintiff's dominant right hand soft tissue causing a chemical burn resulting in severe and permanently painful, impairing and disfiguring injury to

Arguello First Amended Original Complaint

Plaintiff's dominant right hand. Plaintiff has undergone four (4) surgeries to repair the damage without regaining the full use or range of motion of her dominant right hand.

## A. PARTIES

1. Plaintiff is Jessica Arguello who is a citizen of the State of Texas.

2. Defendant HCA Healthcare, Inc., is doing business as St. David's Healthcare, South Austin Hospital and South Austin Surgery Center, LTD. HCA is a corporation incorporated under the laws of the State of Delaware, whose principal address is 1 Park Plaza, Nashville, TN 37203-6527 and maybe served pursuant to the Long-Arm Statute, Tex. Civ. Prac. & Rem. Code §17.042 and Tex. Civ. Prac. & Rem. Code §17.044 by serving its registered agent, CT Corporation System, 300 Montvue Rd., Knoxville, TN 37919-5546, through the Texas Secretary of State.

3. HCA is one of the leading health care services companies in the United States. As of December 31, 2020, HCA operated 185 hospitals, comprised of 178 general, acute care hospitals; five psychiatric hospitals; and two rehabilitation hospitals. In addition, HCA operated 121 freestanding surgery centers (including South Austin Surgery Center, LTD) and 21 freestanding endoscopy centers. HCA's facilities are in 20 states (including Texas) and England.

4. HCA provides a comprehensive array of health care services. HCA's acute care hospitals typically provide a full range of services to accommodate such medical specialties as internal medicine, general surgery, cardiology, oncology, neurosurgery, orthopedics, and obstetrics, as well as diagnostic and emergency services. Outpatient and ancillary health care services are provided by HCA's general, acute care hospitals, freestanding surgery centers, freestanding emergency care facilities, urgent care facilities,

walk-in clinics, diagnostic centers, and rehabilitation facilities. HCA's psychiatric hospitals provide a full range of mental health care services through inpatient, partial hospitalization, and outpatient settings.

5. HCA owns, manages, or operates hospitals, freestanding surgery centers, freestanding emergency care facilities, urgent care facilities, walk-in clinics, diagnostic, and imaging centers, radiation and oncology therapy centers, comprehensive rehabilitation and physical therapy centers, physician practices and various other facilities. As of December 31, 2020, HCA owned and operated 178 general, acute care hospitals with 48,492 licensed beds. Most of HCA's general, acute care hospitals provide medical and surgical services, including impatient care, intensive care, cardiac care, diagnostic care, diagnostic services, and emergency services. The general, acute care hospitals also provide outpatient services such as outpatient surgery, laboratory, radiology, respiratory therapy, cardiology, and physical therapy.  As of December 31, 2020, HCA operated five psychiatric hospitals with 593 licensed beds, HCA's psychiatric hospitals provide therapeutic programs, including child, adolescent and adult psychiatric care and adolescent and adult alcohol and drug abuse treatment and counseling.

6. HCA also operates outpatient health care facilities, which include freestanding ambulatory surgery centers ("ASC's"), freestanding emergency care facilities, urgent facilities, walk-in clinics, diagnostic and imaging centers, comprehensive rehabilitation and physical therapy centers, radiation and oncology therapy centers, physician practices and various other facilities. These outpatient services are an integral component of HCA's strategy to develop comprehensive health care networks in select communities.

Arguello First Amended Original Complaint

7. HCA's workforce is comprised of approximately 275,000 employees (as of December 31, 2020), including approximately 80,000 part-time employees. HCA's workforce includes the employees responsible for Plaintiff's injuries and damages as set forth below.

## B. JURISDICTION

8. The court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

## C. DEMAND FOR JURY TRIAL

9. Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with the Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## D. CONDITIONS PRECEDENT

10. Federal courts sitting in diversity cases must apply state substantive law and federal procedural law.

11. Plaintiff has met all conditions precedent applicable to this matter under state substantive law and federal procedural law. Plaintiff complied with Tex. Civ. Prac. & Rem. Code §74.051 and §74.052 by serving the statutory required notice on St. David's Healthcare by certified mail, return receipt requested with the required Authorization for Release of Protected Health Information on July 20, 2021 as required by Tex. Civ. Prac. & Rem. Code §74.052. More than 60 days have passed since Defendant received notice of this health care liability claim.

Arguello First Amended Original Complaint

12.     Discovery is procedural and controlled under the Federal Rules of Civil Procedure. Rule 26 governs a party's duties to disclose experts, the timing of the disclosure and the content. Fed. R. Civ. P. 26(a)(2). Since Tex. Civ. Prac. & Rem. Code §74.351 conflicts with the Federal Rules, the Fifth Circuit has determined Rule 26 controls over §74.351. See *Passmore v. Baylor Health Care Syst.*, 823 F.3d 284 (5th Cir. 2016), *reh'g en banc denied*. Since the Fifth Circuit has ruled that §74.351 conflicts with the Federal Rules and does not apply in federal court, Plaintiff has not filed her expert report(s) with this complaint and discovery should commence after Defendant answers pursuant to the federal and local rules.

### E. FACTS

13.     At all times material hereto, HCA owned, operated, and managed a surgery center in Travis County, Texas known as South Austin Surgery Center.

14.     HCA is a healthcare entity. HCA is vicariously liable for the negligence of its employees, agents and/or servants including, but not limited to, all nurses and staff who provided surgical nursing care to Plaintiff on January 9, 2020, pursuant to the legal theory of *respondent superior*.

15.     At all times material hereto, certified surgical technologist/scrub technicians, and operating room circulating registered nurses who were employees of HCA, while acting within the course and scope of such employment, provided professional certified surgical technologist/scrub technicians and operating room circulating nursing care to Plaintiff.

16.     At all times material hereto, HCA employed M. Mayfield, certified surgical technologist/scrub technician in its surgery center.

17. At all times material hereto, M. Mayfield was an agent, servant, and/or employee of HCA was acting within the course and scope of such agency, service and/or employment on January 9, 2020, the date made the basis of this lawsuit.

18. At all times material hereto, HCA employed S. Thompson, R.N. as an operating room circulating nurse in its surgery center.

19. At all times material hereto, S. Thompson, R.N. was an agent, servant, or employee of HCA and was acting within the course and scope of such agency, service and/or employment on January 9, 2020, the date made the basis of this lawsuit.

20. On or about January 9, 2020, HCA admitted Plaintiff into its surgery center for the purpose of surgeon Jeffrey T. Jobe, M.D., anesthesiologist Katherine Kohls, M.D., L. Edmond, C.R.N.A., S. Thompson, operating room circulating R.N., and M. Mayfield certified surgical technologist/scrub technician performing a right hand first metacarpalphalangeal (MCP) arthrodesis (fusion) and neuroma excision on Plaintiff's right hand.  See Exhibit A – Operative Report

21. At the conclusion of Plaintiff's surgery, Dr. Jobe copiously irrigated the incision with an irrigant (normal saline used per the Intraoperative Record).

22. Dr. Jobe was then given a syringe by M. Mayfield (certified surgical technologist/scrub tech) of what Dr. Jobe believed to be a syringe containing a local anesthetic of 20 ml of 1% Lidocaine plain with Epinephrine, 0.25% Marcaine plain mixed in a 1:1 mixture.  Instead, Dr. Jobe was negligently given a syringe of Formalin. See Exhibit B - Operative Report Addendum "Complication."

23. The syringe of Formalin was prepared by either S. Thompson, R.N. (operating room circulating nurse) or M. Mayfield (certified surgical technologist/scrub tech).

Arguello First Amended Original Complaint

24. Formalin is a colorless solution of formaldehyde in water. It is used as a preservative for biological specimens.

25. Formalin should never be placed in the sterile field on the back table in the operating room.

26. The injection of Formalin into Ms. Arguello's right hand soft tissue caused a chemical burn to Ms. Arguello's right hand.

27. When Ms. Arguello came out of anesthesia in the recovery room she was complaining of significant pain. Anesthesia provided a nerve block for the uncontrolled pain. The record indicates it was discovered that a specimen cup had been placed on the back table of the surgical field mislabeled and was Formalin. See Exhibit B - Operative Report Addendum "Complication."

28. When the Formalin was injected into Plaintiff's dominant right hand it caused instant cell death in her nerves, tissue, and tendons. Poison control was immediately contacted. Dr. Jobe ordered Plaintiff to be transferred to a hospital for emergency care. By the time Plaintiff reached the emergency room, the tissue was already necrotic, and she was in agony. Sadly, this was only the beginning of a long, painful nightmare Plaintiff is still living today.

29. Plaintiff has endured four (4) additional surgeries because of the predictable and preventable medication error to save her hand, reconstruct the tissue, and hopefully





regain some range of motion and use in her right hand. Despite all these efforts, her hand is still permanently deformed, she lacks feeling in her thumb and index finger, and she has permanent loss of strength and mobility in her dominant right hand. The photographs below are a sample depicting the horrible pain, impairment, and disfigurement Plaintiff has suffered and will suffer in the future.

30. HCA's negligence was a proximate cause of Plaintiff's injuries and damages.

### F. CAUSES OF ACTION

31. Plaintiff incorporates herein each allegation in paragraphs 1 through 30 above in support of her causes of action against HCA.

32. HCA's agents, servants, and/or employees namely M. Mayfield, C.S.T. and S. Thompson, R.N. negligently filled the syringe given to Dr. Jobe with Formalin instead of a local anesthetic of 20 ml of 1% Lidocaine with Epinephrine, 0.25% Marcaine plain mixed in a 1:1 mixture at the end of the surgical procedure on January 9, 2020, and that negligence was a proximate cause of the chemical burn to Plaintiff's right hand.

33. HCA's agents, servants, and/or employees namely M. Mayfield, C.S.T. and S. Thompson, R.N. owed a duty to Plaintiff to follow the standard of care for safe medication management in the perioperative area and prevent predictable and preventable medication errors. The standard of care to prevent medication errors requires:

> a. In perioperative and other procedural settings both on and off the sterile field, label medications and solutions that are not immediately administered. This applies even if only one medication is being used. An immediately administered medication is one that an authorized staff member prepares or obtains, takes directly to a patient, and administers to that patient without any break in the process.

Arguello First Amended Original Complaint

b. In perioperative and other procedural settings both on and off the sterile field, labeling occurs when any medication or solution is transferred from the original packaging to another container.

c. In perioperative and other procedural settings both on and off the sterile field, medication or solution labels include the following:

- Medication or solution name
- Strength
- Amount of medication or solution containing medication (if not apparent from the container)
- Dilute in name and volume (if not apparent from the container)
- Expiration date when not used within 24 hours
- Expiration time when expiration occurs in less than 24 hours

The date and time are not necessary for short procedures as defined by the hospital

d. Verify all medications or solution labels both verbally and visually. Verification is done by two individuals (CST/scrub technician and operating room circulating nurse) qualified to participate in the procedure whenever the person preparing the medication or solution is not the person who will be administering it.

e. Label each medication or solution as soon as it is prepared unless it is immediately administered. Note: an immediately administered medication is one that an authorized staff member prepares or obtains, takes directly to a patient, and administers to that patient without any break in the process.

f. Immediately discard any medication or solution found unlabeled.

Arguello First Amended Original Complaint

g. Remove all Labeled containers on the sterile field and discard their contents at the conclusion of the procedure. Note this does not apply to multi use vials that are handled according to infection control practices.

h. All medications and solutions both on and off the sterile field and their labels are reviewed by entering and exiting staff responsible for the management of medications.

34. HCA's agents, servants, and/or employees namely M. Mayfield, C.S.T. and S. Thompson, R.N. breached the duty owed to Plaintiff to follow the standard of care for safe medication management in the perioperative area as set forth in paragraph 33 by:

a. Failing to verify the medication required by Dr. Jobe of a local anesthetic of 20 ml of 1% Lidocaine with Epinephrine, 0.25% Marcaine plain mixed in a 1:1 mixture verbally and visually when pouring the two separate vials of Lidocaine with Epinephrine and Marcaine into a cup together on the sterile field.

b. Failing to properly label the cup containing the local anesthetic of 20 ml of 1% Lidocaine with Epinephrine, 0.25% Marcaine plain mixed in a 1:1 mixture (medication).

c. Failing to label and verify the syringe used to draw the local anesthetic of 20 ml of 1% Lidocaine with Epinephrine, 0.25% Marcaine plain mixed in a 1:1 mixture was from the correctly labeled cup containing the medication mixture.

d. Failing to label Formalin in a cup in the sterile field when the Formalin was transferred from the original packaging to a cup in the sterile field.

e. Failing to verbally and visually confirm and identify what medications were being transferred from the operating room circulating nurse – S. Thompson to the CST/scrub technician - M. Mayfield on to the sterile field.

Arguello First Amended Original Complaint

    f. Failing to properly label the medications in the cups on the sterile field.

35.    HCA's agents, servants, and/or employees namely M. Mayfield, C.S.T.'s and S. Thompson, R.N.'s negligence in breaching the duties owed to Plaintiff to follow the standard of care for safe medication management in the perioperative area proximately caused Plaintiff to suffer chemical burns to her dominant right hand and undergo four (4) surgeries as of the date of filing this Complaint.

## G. DAMAGES

36.    Defendant's negligence proximately caused Plaintiff to suffer the following damages:

    a.    Medical expenses in the past;

    b.    Medical expenses that, in reasonable probability, she will suffer in the future;

    c.    Loss of earnings and/or earning capacity in the past;

    d.    Loss of earnings and/or earning capacity that, in reasonable probability, she will incur in the future;

    e.    Physical impairment in the past;

    f.    Physical impairment that, in reasonable probability, she will suffer in the future;

    g.    Pain and suffering in the past;

    h.    Pain and suffering that, in reasonable probability, she will suffer in the future;

    i.    Mental anguish in the past;

j.   Mental anguish that, in reasonable probability, she will suffer in the future;

k.   Physical disfigurement in the past;

l.   Physical disfigurement that, in reasonable probability, she will suffer in the future; and

m.   Consequential damages.

## PRAYER

37.   WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests after a jury trial herein, Plaintiff have and recover against Defendant the following relief:

a.   Judgment against Defendant for all Plaintiff's actual damages as determined by the evidence;

b.   Pre-judgment and post-judgment interest as provided by law;

c.   Costs of court as provided by law; and

d.   Such other relief to which Complainant may be entitled.

Respectfully submitted,

**ERSKINE & BLACKBURN, P.L.L.C.**

By:  /s/ Blake C. Erskine, Jr.

Blake C. Erskine, Jr.
Federal Bar No. 27042
State Bar of Texas No. 00786383
Email: berskine@erskine-blackburn.com

Mark B. Blackburn
Federal Bar No. 14680
State Bar of Texas No. 02388990
Email: mblackburn@erskine-blackburn.com

6618 Sitio del Rio Blvd.
Building C-101

Austin, Texas  78730
Telephone (512) 684-8900
Facsimile (512) 684-8920

**ATTORNEYS FOR COMPLAINANT**

Arguello First Amended Original Complaint